AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT
### for the
### Western District of Washington

FILED _____ LODGED
_____ RECEIVED

**May 15, 2020**

CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT TACOMA
BY _____ DEPUTY

In the Matter of the Search of

*(Briefly describe the property to be searched
or identify the person by name and address)*
Geo-Location Data that is Stored at the Premises
Controlled by Facebook Inc.

Case No.  MJ20-5117

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A, incorporated herein by reference.

located in the _____ Northern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2251(a) | Attempted Production of Child Pornography |
| 18 U.S.C. § 2252(a)(2) | Attempted Receipt/Distribution of Child Pornography |
| 18 U.S.C. § 2422(b) | Attempted Enticement of a Minor |

The application is based on these facts:

✓ See Affidavit of Special Agent Kyle McNeal, FBI, attached hereto and incorporated by reference herein.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or; ☐ telephonically recorded.

_____
*Applicant's signature*

KYLE MCNEAL, Special Agent
*Printed name and title*

⊙ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: _____ 05/15/2020 _____

_____
*Judge's signature*

City and state:  Tacoma, Washington

DAVID W. CHRISTEL, United States Magistrate Judge
*Printed name and title*

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

This warrant is directed to Instagram LLC a social media application provider owned by Facebook, Inc. and headquartered at 1601 Willow Road, Menlo Park, California, 94025, and applies to location history data, sourced from methods including GPS, Wi-Fi, Bluetooth, and cell site proximity records generated from the following SUBJECT ACCOUNTS from September 9, 2018, through September 10, 2018:

**(1)** **"memes_are_pretty_nice" ("SUBJECT ACCOUNT 1"); and**

**(2)** **"silver_cuber" ("SUBJECT ACCOUNT 2").**

ATTACHMENT A - 1
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**ITEMS TO BE SEIZED AND SEARCHED**

**I.      Information to be disclosed by Instagram LLC, for search**

To the extent that the information described in Attachments A is within the possession, custody, or control of Instagram LLC, Instagram LLC is required to disclose all location history data, sourced from methods including GPS, Wi-Fi, Bluetooth, and cell site proximity records related to the SUBJECT ACCOUNTS from September 9, 2018, through September 10, 2018, as listed in Attachment A.  For each location point recorded from the SUBJECT ACCOUNTS during the time parameters listed in Attachment A, Instagram LLC shall produce the device ID, timestamp, coordinates, display radius, and data source of available.  This information shall be provided in Universal Time Coordinated (UTC).  Instagram LLC is hereby ordered to disclose the above information to the government within fourteen (14) days of service of this warrant.

**II.      Information to Be Seized By The Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2251(a) (Attempted Production of Child Pornography), 18 U.S.C. § 2252(a)(2) (Attempted Receipt/Distribution of Child Pornography), and 18 U.S.C. § 2422(b) (Attempted Enticement of a Minor) between on or about September 9, 2018, and on or about September 10, 2018, involving JONATHAN DAVID CARPENTER**.**

**Notwithstanding the criminal offenses defined under 18 U.S.C. § 2252 and 2252A or any similar criminal offense, Instagram LLC shall disclose information responsive to this warrant by mailing it to Special Agent Kyle McNeal at address 1145 Broadway, Suite #500, Tacoma, WA 98402, or via email to kmcneal@fbi.gov.**

ATTACHMENT B - 1
USAO #2018R01134

UNITED STATES ATTORNEY
1201 Pacific Ave., Suite 700
Tacoma, Washington 98402
(253) 428-3800

1                                       **AFFIDAVIT**

2

3 STATE OF WASHINGTON     )

4                                  )     ss

5 COUNTY OF PIERCE       )

6

7        I, KYLE MCNEAL, being first duly sworn, hereby depose and state as follows:

8             **I.    INTRODUCTION AND AGENT BACKGROUND**

9        1.     I am a Special Agent with the Federal Bureau of Investigation (FBI),

10 assigned to the Special Agent in Charge in Seattle, Washington.  I have been an Agent

11 with the FBI since April 2011.  My training at the FBI Academy in Quantico, Virginia,

12 included courses in law enforcement techniques, federal criminal statutes, conducting

13 complex criminal investigations, physical and electronic surveillance techniques, and the

14 execution of search warrants.  During my employment as a law enforcement officer, I

15 have attended periodic seminars, meetings, and continued training.

16        2.     As part of my duties as an FBI Special Agent, I investigate criminal

17 violations relating to child exploitation and child pornography including violations of

18 Title 18, United States Code §§ 2251(a), 2252(a)(2), and 2422(b).  I have received

19 training in the area of child pornography and child exploitation, and have observed and

20 reviewed numerous examples of child pornography in various forms of media, including

21 media stored on digital media storage devices such as computers, tablets, cellphones, etc.

22 I have also participated in the execution of numerous search warrants involving

23 investigations of child exploitation and/or child pornography offenses.  I work with other

24 federal, state, and local law enforcement personnel in the investigation and prosecution of

25 crimes involving the sexual exploitation of children.

26        3.     I make this affidavit in support of an application for a search warrant for

27 information that is stored at the premises controlled by Facebook Inc. ("Facebook"), a

28 provider of electronic communications service and remote computing service

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 1
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  headquartered at 1601 Willow Road, Menlo Park, CA 94025for information associated

2  with certain social media accounts as detailed below in paragraph 4 and further described

3  in Attachment A (SUBJECT ACCOUNTS).

4      4.    Specifically, this affidavit seeks an application for a search warrant for geo-

5  location data associated with the Instagram accounts:

6              **a.**    **"memes_are_pretty_nice" ("SUBJECT ACCOUNT 1"); and**

7              **b.**    **"silver_cuber" ("SUBJECT ACCOUNT 2");**

8  that are stored at the premises controlled by Facebook, a social media platform

9  headquartered at 1601 Willow Road, Menlo Park, CA 94025.

10      5.    This affidavit is made in support of an application for a search warrant

11  under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Instagram to

12  disclose to the government geo-location data further described in Attachments A and B.

13  Upon receipt of the information described in Section I of Attachment B, government-

14  authorized persons will review that information to locate the items described in Section II

15  of Attachment B.

16      6.    The facts set forth in this Affidavit are based on my own personal

17  knowledge; knowledge obtained from other individuals during my participation in this

18  investigation, including other law enforcement officers; the review of documents and

19  records related to this investigation; communications with others who have personal

20  knowledge of the events and circumstances described herein; and information gained

21  through my training and experience.

22      7.    Because this Affidavit is submitted for the limited purpose of providing

23  sufficient facts necessary to determine whether there is probable cause in support of the

24  application for a search warrant, it does not set forth each and every fact that I or others

25  have learned during the course of this investigation.  I have set forth only the facts that I

26  believe are relevant to the determination of probable cause to believe that evidence,

27  fruits, and instrumentalities of violations of 18 U.S.C. § 2251(a) (Attempted Production

28  of Child Pornography), 18 U.S.C. § 2252(a)(2) (Attempted Receipt/Distribution of Child

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 2
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Pornography), and 18 U.S.C. § 2422(b) (Attempted Enticement of a Minor).  There is
2  also probable cause to search the information described in Attachment A for evidence of
3  these crimes further described in Attachment B.

## II.    JURISDICTION

5        8.      This Court has jurisdiction to issue the requested warrant because it is "a
6  court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a),
7  (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . .
8  that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## III.    BACKGROUND RELATING TO INSTAGRAM AND RELEVANT TECHNOLOGY

11       9.      Based on my training and experience, I know that cellular devices, such as
12  mobile telephones, are wireless devices that enable their users to send and receive wire
13  and/or electronic communications using the networks provided by cellular service
14  providers."  In order to send or receive communications, cellular devices connect to radio
15  antennas that are part of the cellular network called "cell sites," which can be mounted on
16  towers, buildings, or other infrastructure.  Cell sites provide service to specific
17  geographic areas, although the service area of a given cell site will depend on certain
18  factors, including the distance between towers, and as a result information about what
19  cell site a cellular device connected to at a specific time can provide the basis for an
20  inference about the general geographic location of the device at that point.

21       10.     Based on my training and experience, I also know that most cellular
22  devices have the capability to connect to wireless Internet ("Wi-Fi") access points if a
23  user enables Wi-Fi connectivity.  Wi-Fi access points, such as those created using a
24  router and offered in places such as homes, hotels, airports, and coffee shops, are
25  identified by a service set identifier ("SSID") that functions as the name of the Wi-Fi
26  network.  In general, devices with Wi-Fi capability routinely scan their environment to
27  determine what Wi-Fi access points are within range and will display the names of
28  networks within range under the device's Wi-Fi settings.

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 3
USAO #2018R01134

1        11.    Based on my training and experience, I also know that many cellular

2   devices feature Bluetooth functionality.  Bluetooth allows for short-range wireless

3   connections between devices, such as between a mobile device and Bluetooth-enabled

4   headphones.  Bluetooth uses radio waves to allow the devices to exchange information.

5   When Bluetooth is enabled, a mobile device routinely scans its environment to identify

6   Bluetooth devices, which emit beacons that are within range.

7        12.    Based on my training and experience, I also know that many cellular

8   devices, such as mobile telephones, include global positioning system ("GPS")

9   technology.  Using this technology, the phone can determine its precise geographical

10   coordinates.  If permitted by the user, this information is often used by apps installed on a

11   device as part of the app's operation.

12        13.    Instagram is an online social networking application offered by Facebook

13   and designed for photo-sharing that enables its users to take pictures and share them

14   either publicly or privately on the app, as well as through a variety of other social

15   networking platforms, such as Facebook, Twitter, Tumblr, and Flickr.  Users can also

16   apply digital filters to their images and videos.  Instagram was acquired by Facebook in

17   April 2012.

18        14.    Every user who creates an Instagram account has a profile and news feed.

19   When a user posts a photo or video on Instagram, it will be displayed on the user's

20   profile. A user profile may be customized to include the user's name, photo, short

21   biography and a website link, if the user has one. Users who "follow" you will see your

22   posts in their own feed. Likewise, you will see posts from the users whom you follow on

23   your news feed. A user profile can be set to public or private. If a user account is public,

24   anyone can find and view the user's profile along with all the photos and videos they

25   post.

26        15.    A user can interact with other users on Instagram by following them, being

27   followed by them, commenting on the other user's posts, liking and/or tagging another

28

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 4
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  user's posts, and by exchanging private messages with other users. Additionally, a user
2  can save photos they see on Instagram.

3      16.    Based on my training and experience, I know that, in the context of mobile
4  devices, Facebook's cloud-based services, including Instagram, can be accessed either
5  via the device's Internet browser or via apps offered by Instagram that have been
6  downloaded onto the device.  The Instagram App exists for, and can be downloaded to,
7  iPhones and Android devices.

8      17.    The location information collected by Facebook through Instagram is
9  derived from sources including GPS data, information about the cell sites within range of
10  the mobile device, and information about Wi-Fi access points and Bluetooth beacons
11  within range of the mobile device.  Content from Facebook and Instagram is collected
12  and shared with partners to include advertising companies. This data may be used to
13  deliver targeted advertising opportunities to companies' advertising through Instagram
14  and/or Facebook.  Facebook/Instagram receive revenue from advertising. Thus,
15  Instagram has a business incentive to, and does, gather location and user data in a variety
16  of ways through a number of techniques.  In addition, while location information for
17  users of Android devices is particularly robust, through the prolific nature of its services
18  and analytical tools for advisers and publishers, Instagram is able to gather this data for a
19  substantial number of smartphone users.

20      18.    Location data, such as the location data in the possession of Facebook
21  through Instagram can assist in a criminal investigation in various ways.  As is relevant
22  here, I know based on my training and experience that Facebook through Instagram has
23  the ability to determine the location of, based on location data collected via the use of
24  Instagram as described above, mobile devices that were in a particular geographic area
25  during a particular time frame when accessing Instagram accounts.  Among other things,
26  this information can inculpate or exculpate an Instagram account holder by showing that
27  he was (or was not) near a given location at a time relevant to the criminal investigation.

28

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 5
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   19.   Based on my training and experience, and information from other
2   experienced agents, I use the following technical terms to convey the following
3   meanings:

4   a.   "Internet Service Providers" (ISPs) are commercial organizations
5   that are in business to provide individuals and businesses access to the Internet.  ISPs
6   provide a range of functions for their customers including access to the Internet, web
7   hosting, email, remote storage, and co-location of computers and other communications
8   equipment.

9   b.   "Internet Protocol address" (IP address), as used herein, is a code
10   made up of numbers separated by dots that identifies a particular computer on the
11   Internet.  Every computer requires an IP address to connect to the Internet.  IP addresses
12   can be dynamic, meaning that the ISP assigns a different unique number to a computer
13   every time it accesses the Internet.  IP addresses might also be static if an ISP assigns a
14   user's computer a particular IP address which is used each time the computer accesses the
15   Internet.

16   c.   "Domain names" are common, easy to remember names associated
17   with an IP address.  For example, a domain name of "www.usdoj.gov" refers to the IP
18   address of 149.101.1.32.  Domain names are typically strings of alphanumeric characters,
19   with each level delineated by a period.

20   d.   "Website" consists of textual pages of information and associated
21   graphic images.  The textual information is stored in a specific format known as Hyper-
22   Text Mark-up Language (HTML) and is transmitted from web servers to various web
23   clients via Hyper-Text Transport Protocol (HTTP).

## IV.   SUMMARY OF INVESTIGATION

24   
25   20.   Minor Victim 1 is now a 14-year-old boy born in April 2006.  Minor
26   Victim 2 is a 12-year-old boy born in July 2007.  On September 17, 2018, MV1 and
27   MV2's mother, Christina Carpenter, notified U.S. Army CID special agents of her
28   

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 6
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  concerns that JONATHAN DAVID CARPENTER had sexually abused MV1 and MV2

2  (she also notified agents that MV2 suffered from autism).

3      21.  The allegations in this case include offenses occurring during three separate

4  time intervals in three different geographical locations including:  (1) in 2013,

5  CARPENTER allegedly sexually abused MV1 while the family lived near Fort Drum in

6  upstate New York; (2) in the fall of 2015, CARPENTER allegedly committed the

7  offenses of Aggravated Sexual Abuse of a Child under 12 against MV1 and MV2 in

8  violation of 18 U.S.C. §§ 2241(c), 2246(2) and 7 while the family resided on Joint Base

9  Lewis-McChord; and (3) on or about September 10, 2018, CARPENTER allegedly used

10  MV1's iPhone 7 to solicit nude images from approximately three of MV1's minor friends

11  while residing in Lacey, Washington, in violation of 18 U.S.C. §§ 2251(a) and (e),

12  2252(a)(2) and 2422(b) and (2).

13      22.  The information associated with the **SUBJECT ACCOUNTS**, which is

14  further described in Attachment A, for the evidence, fruits and instrumentalities, as

15  further described in Attachment B, of the previously enumerated offenses is primarily

16  rooted in the third category of offenses.

17      23.  On September 26, 2018, CARPENTER was indicted for the offenses of

18  aggravated sexual abuse of a child under the age of 12 against MV1 and MV2 arising

19  from the instant allegations in violation of 18 U.S.C. §§ 2241(c), 2246(2) and 7.  On

20  September 25, 2019, CARPENTER was charged by way of a superseding indictment for

21  one additional offense of attempted production of child pornography in violation of 18

22  U.S.C. §§ 2251(a) and (e).

23      24.  On the afternoon of September 17, 2018, interviews were conducted with

24  MV1 and MV2.  Based upon the victims' allegations and their cohabitation with

25  CARPENTER, agents conducted a probable cause arrest.

26      25.  On September 17, 2018, CID Special Agent (SA) Dan Chandler conducted

27  a forensic interview of MV1.  MV1 stated that when he was approximately seven-years-

28  old, his mother, Christina Carpenter left their residence for a period of approximately 11

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 7
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   days.  It is believed that this occurred in 2013-2014 when MV1 was in the 2nd Grade at

2   Knickerbocker Elementary School.  The family was residing in Watertown, New York,

3   during this time.

4      26.   MV1 recalled that he awoke one night and needed to use the restroom.

5   MV1 stated that, while disoriented, he stumbled into the living room, mistakenly believed

6   he had reached the restroom and began to urinate on the floor.

7      27.   Meanwhile, CARPENTER was naked on the couch watching the television

8   show "Archer."  MV1 stated that CARPENTER became angry, placed a rag into MV1's

9   mouth, and bent MV1 over.  MV1 stated that CARPENTER then anally penetrated him

10  with his penis.  At one point, the rag fell out of his mouth, which CARPENTER replaced.

11  MV1 stated that CARPENTER continued to penetrate him for an unknown amount of

12  time.  When the attack ended, MV1 fled to his room crying and did not recall whether

13  CARPENTER ejaculated or wore a condom.

14     28.   MV1 stated that a second incident occurred during the same 11-day period

15  in New York when Christina Carpenter was absent from the residence.  MV1 recalled

16  that CARPENTER was again laying on the couch in the nude and called MV1 to him.

17  MV1 stated that CARPENTER then performed oral sex on MV1.  CARPENTER then

18  told MV1 "Okay, it's your turn," to which MV1 responded "no."

19     29.   On February 27, 2020, MV-1 was forensically re-interviewed.  MV-1

20  provided a more detailed account of this incident.  MV-1 explained that he woke up to go

21  to the bathroom and CARPENTER called him over to him.  CARPENTER was nude on

22  the couch in the living room at the time.  CARPENTER had MV-1 watch the television

23  show, "Archer" with him and had him drink something that he believed contained Coke

24  Zero.  CARPENTER told MV-1 to take off his clothes.  MV-1 took off his clothes.

25  CARPENTER then performed oral sex on MV-1.  After a while, CARPENTER stopped

26  and told MV-1 to perform oral sex on him.  MV-1 refused and went back to his room.

27  During the interview, MV-1 was asked if he knew the difference between "circumcised"

28  and "uncircumcised."  MV-1 indicated that he did.  MV-1 was asked if CARPENTER

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 8
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  was "circumcised" or "uncircumcised."  MV-1 stated that CARPENTER was

2  "circumcised."  MV-1 stated that he felt scared and confused when this incident occurred.

3  MV-1 advised that this was the last time something happened with CARPENTER until

4  he was in the fourth grade.

5      30.     MV1 stated that a third incident may have occurred during the same 11-day

6  period when Christina Carpenter was away from the home.  MV1 alleged that

7  CARPENTER directed him to sleep in CARPENTER's bed, which MV1 did.  MV1

8  awoke some time later after his clothes had been removed.  MV1 did not recall how this

9  had happened.

10     31.     MV1 stated that sometime in 2015, while watching television at the

11  Montgomery Street residence on JBLM, CARPENTER told MV1 to play cards with him.

12  MV1 remembered that CARPENTER told him they would "play like a casino, except

13  instead of chips we use clothes."

14     32.     MV1 claimed that he and CARPENTER ultimately disrobed while playing

15  CARPENTER's game.  CARPENTER then directed MV1 to go to CARPENTER's room

16  and lay down.  MV1 complied.  CARPENTER then entered the room and penetrated

17  MV1's anus.  MV1 stated that he believed CARPENTER used his finger although MV1

18  conceded that he only felt, but did not observe, the penetration.  MV1 stated that

19  CARPENTER then rolled him onto his back and told MV1 to "suck his dick," to which

20  MV1 replied "no" and fled the room.  MV1 stated that he disclosed some of the details to

21  Christina Carpenter when she returned home.

22     33.     On September 17, 2018, CID agents interviewed Christina Carpenter.

23  Christina Carpenter told agents that sometime between August and October of 2015,

24  MV1 had disclosed to her that CARPENTER digitally penetrated MV1's anus with

25  CARPENTER's finger.  Christina Carpenter stated that this disclosure occurred while

26  they were living at their on-post residence located on Montgomery Street, JBLM,

27  Washington 98433.

28

34.     On August 27, 2019, agents re-interviewed Christina Carpenter.  Christina Carpenter now recalled that the incident with MV1 likely took place in approximately June or July of 2015 when she was away from the family residence undergoing a sleep study.  Christina Carpenter recalled that the family lived in the JBLM residence from May 2015 through December 31, 2015.

35.     The morning following the sleep study, she received a peculiar voice-mail from CARPENTER in which he claimed MV1 had falsely accused him of inappropriately touching him and specifically alleged:  "[MV1] is lying, I never touched him."  Christina Carpenter later called CARPENTER at which time his story changed.  CARPENTER now claimed that he was taking MV1 into his bedroom to apply lotion to MV1's buttocks to treat a sunburn.  CARPENTER insisted that he did not digitally penetrate MV1's anus.  When asked why he took MV1 to the bedroom for the lotion application, CARPENTER told Christina Carpenter "I don't know, I just did."  Christina Carpenter did not know if CARPENTER actually applied the lotion on MV1's buttocks, but MV1 told her that he did.

36.     MV1 was re-interviewed on February 27, 2020.  In the interview, MV-1 did not recall any incident involving putting on sunscreen.

37.     When Christina Carpenter returned to the residence, MV1 was very upset, "in tears," and claimed CARPENTER had digitally penetrated his anus.  Christina Carpenter checked MV1's posterior for a sunburn and only saw that his back was "a little red" but his buttocks did not display similar discoloration.  However, because Christina Carpenter did not observe any evidence of acute anal injury/redness, she made what she now characterizes as a "horrible judgment call" by assuming MV1 had made a false accusation.  Christina Carpenter reasoned that she did not believe MV1 at the time because she was triggered by her own sexual trauma that she had previously suffered while deployed to Korea.  She was "scared" and did not originally want to believe MV1 but now regrets this decision.

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 10
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1    38.    Upon further questioning, Christina Carpenter acknowledged MV1 had
2 never previously made any other false allegations of sexual abuse against CARPENTER
3 or anyone else.  The only acts of dishonesty that she could identify were MV1's
4 occasional failures to take responsibility for various routine and minor juvenile acts.

5    39.    Following this incident, Christina Carpenter observed that MV1 was
6 increasingly reluctant to spend time with CARPENTER.  Christina Carpenter did recall
7 traveling away from New York for an Army field exercise from approximately March 9
8 through March 21, 2014.

9    40.    Christina Carpenter also corroborated that she and CARPENTER enforced
10 a policy that MV1 was required to turn-in his iPhone 7 every Friday and Saturday night at
11 approximately 10 p.m. (9 p.m. on weeknights).  She also knew that MV1 had retained the
12 iPhone 4 but did not know that he continued to access the Instagram SUBJECT
13 ACCOUNTS by connecting through the family's WiFi.

14    41.    Christina Carpenter acknowledged CARPENTER also consumed
15 significant amounts of alcohol throughout their marriage.  Once they relocated to JBLM
16 in 2015, CARPENTER increased his drinking frequency by consuming at least three
17 mixed beverages each night.  When heavily intoxicated, Christina Carpenter observed
18 CARPENTER wandering through their home while nude (on more than once per month
19 on average).

20    42.    On September 17, 2018, MV2 was interviewed by Susan Villa, Child
21 Forensic Interviewer, at Monarch Children's Justice Center in Lacey, Washington.
22 During the child forensic interview, MV2 provided the following details of his abusive
23 episode with CARPENTER in CARPENTER's bedroom of the JBLM Montgomery
24 Street duplex in which the family lived.  MV2 stated that the following incidents
25 occurred while at "the duplex," which Christina Carpenter identified as 8431
26 Montgomery Street, JBLM, Washington.

27    43.    MV2 estimated that the incident occurred about three years prior to the
28 interview with Villa, when MV2 was in the 3rd grade (MV2 was enrolled in the 3rd Grade

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 11
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   during the 2015-2016 school year).  MV2 stated that CARPENTER sent MV2 to
2   CARPENTER's room.  MV2 stated that while in CARPENTER's room, CARPENTER
3   told MV2 to "suck [CARPENTER's] 'pee-pee,'" to which MV2 replied "No, am I gay?"
4   and asked "Are you gay?"  MV2 claimed that CARPENTER said "just do it," to which
5   MV2 asked "What happens if I don't?"  MV2 stated that CARPENTER replied "I'll
6   spank you."  MV2 stated that he was sitting on the bed and CARPENTER was standing
7   near the bed.  MV2 stated that CARPENTER pulled down CARPENTER's pants.  MV2
8   disclosed that he then "sucked [CARPENTER's] 'pee-pee'" and that "pee went out in my
9   mouth."  MV2 stated that he "spit it out" in the bathroom, but on another occasion,
10  CARPENTER wanted MV2 to "swallow it."

11          44.     MV2 described an incident that occurred at the "duplex" where
12  CARPENTER "humped" MV2.  It is believed that this took place in approximately 2015.
13  MV2 described the incident as taking place in CARPENTER's bedroom while they were
14  both nude.  MV2 was laying on the bed while CARPENTER "put his "pee pee" in
15  [MV2's] butt." CARPENTER was also spanking MV2 during this incident.

16          45.     On August 27, 2019, an FBI Forensic Interviewer recorded a second
17  interview with MV2.  MV2 remembered that CARPENTER humped and spanked MV2
18  in "the duplex" on JBLM.  CARPENTER had removed MV2's clothes before assaulting
19  him.  CARPENTER physically forced MV2's mouth onto his penis.  MV2 also disclosed
20  that CARPENTER told MV2 that "he would kill" him if MV2 told anyone about the
21  abuse.  Based upon MV2's responses, it was unknown when or during which episode
22  CARPENTER made this threat.

23          46.     MV2 largely restated his prior allegations with a couple of notable
24  exceptions.  MV2 claimed that he only placed his mouth on CARPENTER's penis once,
25  not twice.  During this latter interview, MV2 could not recall his age at the time or the
26  academic year during which the abuse took place.

27          47.     Agents did acknowledge that, during the forensic interviews, MV2
28  presented apparent difficulty with expressing chronological explanations of all incidents,

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 12
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1   including descriptions of events not related to the reported offenses.  MV2 spoke in

2   disjointed sentences throughout and required multiple questions to clarify details about

3   incidents, including locations of incidents, when incidents occurred, and differentiating

4   two incidents of described oral penetration and two incidents of "humping."  Specifically,

5   MV2 required multiple questions to differentiate two incidents of "humping," one in

6   which CARPENTER was allegedly wearing shorts and one in which CARPENTER was

7   nude.

8        48.    With the exception of MV2's clothed "humping" disclosure, the alleged

9   incidents occurred at an on-post JBLM residence that is located within the special

10  maritime and territorial jurisdiction of the United States and the Western District of

11  Washington.

12       49.    During his interview, MV1 also recalled an incident that occurred between

13  CARPENTER and MV2 at their residence on JBLM in approximately 2015.  MV2 got in

14  trouble at school.  When MV2 returned home, CARPENTER told MV2 to go to

15  CARPENTER's room.  MV1 stated that he did not see what happened in the room, but

16  questioned MV2 after the incident took place.  MV2 disclosed that CARPENTER

17  spanked him with CARPENTER's "pee pee."  Additional disclosures were made by

18  MV2 to MV1 in 2018 regarding CARPENTER's sexual abuse of MV2.  In 2018, MV2

19  disclosed to MV1 that CARPENTER forced MV2 to "suck his dick."  This incident is

20  also believed to have occurred on JBLM in 2015.

21       50.    During her September 17, 2018, interview, Christina Carpenter informed

22  agents that MV2 recently disclosed to her that CARPENTER "made him suck his 'pee-

23  pee' until pee came out."  Christina Carpenter stated that she did not ask any follow-up

24  questions but instead told CARPENTER she wanted to seek counseling for the children

25  without him present.

26       51.    MV1 stated that approximately one week prior to his interview, on or about

27  September 9, 2018, MV1 provided his iPhone 7 to CARPENTER at approximately 10:00

28

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 13
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  p.m., pursuant to the family's cell-phone rule.  In September 2018, the family was

2  residing at 5710 20th Avenue Southeast, Lacey, Washington.

3      52.    It is believed that this event occurred during the first night that Christina

4  Carpenter was absent from the home on a weeklong work-trip outside of the state.  MV1

5  stated that he also had an iPhone 4 in his bedroom of which CARPENTER was unaware.

6  The iPhone 7 was associated with phone number (253) 722-7826.  The iPhone 4 and

7  iPhone 7 contained the Instagram App, which could have transmitted location data to

8  Facebook through Instagram from September 9, 2018, through September 10, 2018.

9      53.    That evening, MV1 communicated via Instagram direct messages from

10  SUBJECT ACCOUNT 2 to his female friend (MV3) using his iPhone 4.  The iPhone 4

11  did not have service through a provider but did allow MV1 to access his Instagram

12  accounts through the family's WiFi.  The iPhone 4 was previously associated with phone

13  number 253-722-7826.

14      54.    MV1 stated that during his conversation with MV3 late in the evening of

15  September 9, 2019, he heard vibrations ostensibly emanating from a cell phone

16  (presumably the iPhone 7) elsewhere in the home and, sometime later, CARPENTER

17  called MV1's name.  MV1 immediately suspected that his Instagram communications

18  were also appearing on his iPhone 7 and thereby drawing CARPENTER's attention.

19      55.    MV1 stated that CARPENTER then entered his room, approached him and

20  demanded the password for MV1's Instagram account, which he provided.  Shortly after

21  providing the password, MV3 informed MV1 that she had received an iMessage from

22  MV1's iPhone 7 (SUBJECT ACCOUNT 1), which read "Send nudes to me, please."

23  MV3 then forwarded a screenshot of this message to MV1.  The investigation identified

24  this account as SUBJECT ACCOUNT 1 which was linked to the iPhone 7.  MV1 stated

25  that he did not send the message as the phone was in the possession of CARPENTER.

26      56.    MV1 also told agents that another peer-aged female friend of MV1 (MV4)

27  later forwarded a screenshot from MV4's cell phone to MV3, who forwarded it to MV1,

28

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 14
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  indicating that she too had received a nude pic solicitation, from MV1's iPhone 7.  It is

2  believed that this occurred in the early morning hours of September 10, 2018.

3        57.    During her September 17, 2018, interview, Christina Carpenter recalled

4  MV1 reporting to her that CARPENTER requested the password to MV1's Instagram

5  account and that CARPENTER utilized MV1's Instagram account on MV1's iPhone 7 to

6  request nude images from one of MV1's female friends.

7        58.    MV3, is a 14-year-old girl currently residing in Kansas with her parents.

8  During her forensic interview, MV3 indicated that she had been friends with MV1 since

9  they were students together during the 4th grade in Washington.  MV3 confirmed that she

10 received a message when she was approximately 13-years-old from one of MV1's

11 Instagram Accounts (SUBJECT ACCOUNT 1) on or about September 10, 2018, while

12 MV1 was messaging her through another Instagram Account (SUBJECT ACCOUNT 2).

13 Such an occurrence had never happened to her before, which is why she had immediately

14 notified MV1 and forwarded the following screen shot of the solicitation from her phone:



24        59.    MV3 did not provide the requested nude image.  In addition to the

25 Instagram request, MV3 also received the following iMessage from MV1's iPhone 7 at

26 approximately 4 a.m. on September 10, 2018:

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 15
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11



12   60.     As reflected in the extraction report, someone using the iPhone 7 also

13   attempted to FaceTime with MV3 around the same time-period.

14   61.     Agents identified an iMessage sent from the iPhone 7 to MV4.  On January

15   17, 2019, agents conducted a forensic interview of MV4 who lived in Texas.  At the time

16   of the incident, MV4 was 12-years-old and also knew MV1 from elementary school.  She

17   specifically received the following text message from MV1's iPhone 7 early in the

18   morning on or about September 10, 2018:  "[s]end me a picture of you nine…Nude not

19   nine":

20
21
22
23
24
25
26
27
28

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 16
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1
2
3
4
5
6
7
8
9
10
11
12
13



14   62.   MV4, realizing that someone must have used MV1's phone to make the
15   request, did not produce any images.  MV4 discussed the message with MV3.  MV3
16   disclosed to MV4 that she received the same message.  MV-3 notified MV1 of the
17   message.  A forensic analysis recovered this screen shot.

18   According to the analysis of the iPhone 7, MV3 obtained and forwarded the
19   following copy of CARPENTER's text from MV4 to MV1.

20
21
22
23
24
25
26
27
28



AFFIDAVIT OF SPECIAL AGENT MCNEAL - 17
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

63.     On January 24, 2019, agents also forensically interviewed MV5, who was 12-years-old at the time of the incident and living with her parents in Olympia, Washington.  MV5 disclosed that she received a text message from MV1's iPhone 7 while she was sleeping sometime in 2018, stating "[p]lease send me nudes."  Such a request was unlike any prior messaging that she had received from MV1's phone.  MV5 did not respond and deleted the message.  Law enforcement have not been able to recover the image or record of this message.

64.     According to MV5, she did not tell MV1 about her message until sometime later in the fall of 2018 at a large teen social event during which she briefly spoke with MV1.

65.     On September 5, 2019, FBI SA McNeal interviewed CARPENTER's former spouse, *Christine* Carpenter,[1] by telephone.  While the couple were married in 2011, Christine Carpenter described finding sexually explicit videos of children and animals downloaded and saved on CARPENTER's computer when she attempted to check her e-mail and pay bills.  She opened three of the identified videos that were readily accessible on the computer. This incident is believed to have taken place when Christine Carpenter was living near Watertown, New York, and while CARPENTER was stationed at Fort Drum as an active duty servicemember.

66.     The first video contained apparent bestiality.  The second video depicted a nude male child approximately 10-14 years of age sitting and/or standing on a couch while masturbating.  Christine Carpenter was asked to describe why she thought the child was 10-14 years of age.  Christine Carpenter based her estimate of the child's age on the size of the child's body compared to the size of the couch.  Christine Carpenter advised that the video was blurry and that the camera used to take the video was stationary.

67.     The third video depicted a nude Asian female child approximately four to six years of age.  The video was approximately five to ten minutes in length.  Christine

---

[1] to be distinguished from his current spouse *Christina* Carpenter.

1  Carpenter described it as an amateur video that was filmed with a handheld camera.
2  During part of the video, the child was on her back and on the bed on her back while fully
3  nude.  Christine Carpenter described the focal point of the video as the child's vaginal
4  area.  The person recording the incident digitally penetrated the child's vagina with his
5  fingers and inserted his penis into the child's vagina.  In another part of the video, the
6  female child performed oral sex on the adult male.  Christine Carpenter advised that she
7  only viewed portions of the video.  Christine Carpenter believed the child was four-to-six
8  years of age based on the lack of breast development, absence of pubic hair, and overall
9  body size.

10       68.     After viewing the videos, Christine Carpenter searched the computer's
11  browsing history.  Christine Carpenter discovered someone, while previously using the
12  computer, had utilized the search terms "6 yr girl" and "Petite girl."

13       69.     The following day, Christine Carpenter confronted CARPENTER about the
14  content on his computer and how disgusting she thought it was especially because they
15  had children together.  At first, CARPENTER denied searching for the content, stating it
16  just appeared.  He initially claimed that it was not his intention to possess the material.

17       70.     Later, CARPENTER acknowledged that he was searching the internet for
18  smaller and petite women to which he was attracted.  He then admonished Christine
19  Carpenter because, as he argued, people are into different things and, as a result, she
20  should not be critical of his behavior.  Christine Carpenter arranged for CARPENTER to
21  speak to her mother, a conversation during which CARPENTER also acknowledged
22  searching the internet for petite women.  A subsequent interview of Christine Carpenter's
23  mother indicated that she did remember discovering that CARPENTER had been
24  accessing pornography but did not recall the specific details of the episode.

25       71.     As for alcohol, Christine Carpenter related that CARPENTER was a
26  "heavy drinker" and this alcohol use resulted in at least one DUI arrest.

27       72.     Christine Carpenter also recalled that CARPENTER routinely ambled
28  through their residence while naked and even asked Christine Carpenter that their

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 19
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  wedding be nude-only.  CARPENTER acquiesced to a clothed ceremony only after

2  Christine Carpenter's father refused to attend their wedding under these circumstances.

3  Christine Carpenter remembered CARPENTER occasionally fell asleep on the living

4  room couch while naked.

5      73.    Finally, Christine Carpenter said CARPENTER's father was convicted and

6  imprisoned for sexually abusing both CARPENTER (at approximately 4 years of age)

7  and his brother.  CARPENTER denied that the abuse occurred and instead claimed that

8  his father pled guilty simply to avoid putting his children through the ordeal of a trial.

9      74.    On September 17, 2018, FBI Agents and Lacey Police Department Officers

10  contacted CARPENTER at his in Lacey, Washington, and placed him under arrest.

11      75.    On September 26, 2018, a federal grand jury presiding in the Western

12  District of Washington returned an Indictment against CARPENTER for committing

13  aggravated sexual abuse of a child under the age of 12 against MV1 and MV2 in

14  violation of 18 U.S.C. §§ 2241(c), 2246(2) and 7.

15      76.    On September 25, 2019, a federal grand jury presiding in the Western

16  District of Washington returned a Superseding Indictment against CARPENTER for (1)

17  four counts of committing aggravated sexual abuse of a child under the age of 12 against

18  MV1 and MV2 in violation of 18 U.S.C. §§ 2241(c), 2246(2) and 7 and (2) one count of

19  attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e).

20      77.    CARPENTER was scheduled for trial on May 4, 2020, in cause number 18-

21  CR-5491RJB, but has been continued pursuant to the Court's COVID-19 General Orders.

22      78.    On April 2, 2019, the FBI served a federal search warrant on Facebook Inc.

23  seeking all Instagram messages involving the SUBJECT ACCOUNTS between

24  September 9, 2018, and September 10, 2018.

25      79.    Based on my training and experience as a Special Agent and the

26  information contained in this Affidavit, I submit there is probable cause to believe that

27  JONATHAN DAVID CARPENTER violated 18 U.S.C. § 2251(a) (Attempted

28  Production of Child Pornography), 18 U.S.C. § 2252(a)(2) (Attempted

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 20
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

1  Receipt/Distribution of Child Pornography), and 18 U.S.C. § 2422(b) (Attempted
2  Enticement of a Minor).

3      80.    Based on the foregoing, I submit that there is probable cause to search
4  location history data, sourced from methods including GPS, Wi-Fi, Bluetooth, and cell
5  site proximity records generated from the following SUBJECT ACCOUNTS from
6  September 9, 2018, through September 10, 2018 as further described in Attachments A
7  and B.  Among other things, this information can inculpate or exculpate a user of
8  Instagram services by showing that he/she was (or was not) used the SUBJECT
9  ACCOUNTS during the listed time period.

10                          **VI.  CONCLUSION**

11      81.    Based on the forgoing, I request that the Court issue the proposed search
12  warrant.  Accordingly, by this Affidavit and Warrant, I seek authority for the government
13  to search all of the items specified in Section I, Attachment B, and specifically to seize all
14  of the data and records identified in Section II to that same Attachment.

_____
Kyle McNeal, Affiant
Special Agent
Federal Bureau of Investigation

SUBSCRIBED and SWORN to before me this 15th day of May, 2020.

_____
DAVID W. CHRISTEL
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT MCNEAL - 21
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVENUE, SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT A**

**PROPERTY TO BE SEARCHED**

This warrant is directed to Instagram LLC a social media application provider owned by Facebook, Inc. and headquartered at 1601 Willow Road, Menlo Park, California, 94025, and applies to location history data, sourced from methods including GPS, Wi-Fi, Bluetooth, and cell site proximity records generated from the following SUBJECT ACCOUNTS from September 9, 2018, through September 10, 2018:

**(1)** **"memes_are_pretty_nice" ("SUBJECT ACCOUNT 1"); and**

**(2)** **"silver_cuber" ("SUBJECT ACCOUNT 2").**

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

**ATTACHMENT B**

**ITEMS TO BE SEIZED AND SEARCHED**

**I.    Information to be disclosed by Instagram LLC, for search**

To the extent that the information described in Attachments A is within the possession, custody, or control of Instagram LLC, Instagram LLC is required to disclose all location history data, sourced from methods including GPS, Wi-Fi, Bluetooth, and cell site proximity records related to the SUBJECT ACCOUNTS from September 9, 2018, through September 10, 2018, as listed in Attachment A.  For each location point recorded from the SUBJECT ACCOUNTS during the time parameters listed in Attachment A, Instagram LLC shall produce the device ID, timestamp, coordinates, display radius, and data source of available.  This information shall be provided in Universal Time Coordinated (UTC).  Instagram LLC is hereby ordered to disclose the above information to the government within fourteen (14) days of service of this warrant.

**II.   Information to Be Seized By The Government**

All information described above in Section I that constitutes evidence of violations of 18 U.S.C. § 2251(a) (Attempted Production of Child Pornography), 18 U.S.C. § 2252(a)(2) (Attempted Receipt/Distribution of Child Pornography), and 18 U.S.C. § 2422(b) (Attempted Enticement of a Minor) between on or about September 9, 2018, and on or about September 10, 2018, involving JONATHAN DAVID CARPENTER**.**

**Notwithstanding the criminal offenses defined under 18 U.S.C. § 2252 and 2252A or any similar criminal offense, Instagram LLC shall disclose information responsive to this warrant by mailing it to Special Agent Kyle McNeal at address 1145 Broadway, Suite #500, Tacoma, WA 98402, or via email to kmcneal@fbi.gov.**

ATTACHMENT B - 1
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800

## CERTIFICATE OF AUTHENTICITY OF DOMESTIC RECORDS PURSUANT TO FEDERAL RULES OF EVIDENCE 902(11) AND 902(13)

I, _____, attest, under penalties of perjury by the laws of the United States of America pursuant to 28 U.S.C. § 1746, that the information contained in this certification is true and correct.  I am employed by Instagram LLC, and my title is _____.   I am qualified to authenticate the records attached hereto because I am familiar with how the records were created, managed, stored, and retrieved.  I state that the records attached hereto are true duplicates of the original records in the custody of Instagram LLC.  The attached records consist of _____ **[GENERALLY DESCRIBE RECORDS (pages/CDs/megabytes)]**.  I further state that:

a.     all records attached to this certificate were made at or near the time of the occurrence of the matter set forth by, or from information transmitted by, a person with knowledge of those matters, they were kept in the ordinary course of the regularly conducted business activity of Instagram LLC, and they were made by Instagram LLC as a regular practice; and

b.     such records were generated by Instagram LLC'S electronic process or system that produces an accurate result, to wit:

1.     the records were copied from electronic device(s), storage medium(s), or file(s) in the custody of Instagram LLC in a manner to ensure that they are true duplicates of the original records; and

CERTIFICATION - 1
USAO #2018R01134

2.      the process or system is regularly verified by Instagram LLC, and at all times pertinent to the records certified here the process and system functioned properly and normally.

I further state that this certification is intended to satisfy Rules 902(11) and 902(13) of the Federal Rules of Evidence.

_____         _____

Date                            Signature

CERTIFICATION - 2
USAO #2018R01134

UNITED STATES ATTORNEY
1201 PACIFIC AVE., SUITE 700
TACOMA, WASHINGTON 98402
(253) 428-3800